Donald GLITTENBERG, Appellant,

v.

Faye HUGHES, Appellee.

No. 17638.

Court of Civil Appeals of Texas,
Fort Worth.

June 27, 1975.

Kelsey & Wood, and R. William Wood, Denton, for appellant.

Faye Hughes, pro se.

OPINION

BREWSTER, Justice.

This case originated in the justice court where a judgment for $200, plus costs, was rendered in favor of the plaintiff, Faye Hughes, and against the defendant, Donald Glittenberg. Glittenberg appealed the case to the County Court. On September 27, 1974, the County Clerk's office sent a letter to an attorney, Earl Coleman, with a copy of that letter to Mr. Bill Wood, Glittenberg's attorney, advising that the case had been set for trial on October 9, 1974, at 10 A.M. On October 9, 1974, at 10 A.M., the County Court, in the absence of defendant and his attorney, rendered a default judgment for $200, plus costs of court, in favor

of Faye Hughes and against the defendant, Donald Glittenberg, and this appeal is being made by Glittenberg from that decree.

The judgment appealed from recites that on October 9, 1974, the date the case had been set for trial, the plaintiff, Faye Hughes, appeared in person in the County Court and announced ready for trial, and the defendant and his lawyer, although having been notified in writing of the setting, both failed to appear and that the court proceeded to trial in their absence and based on evidence offered by plaintiff at the trial the court rendered the judgment being appealed from.

The defendant, Glittenberg, filed a motion for new trial wherein he alleged that his failure to appear at the trial was not intentional or the result of conscious indifference on his part, but was accidental and due to a mistake on the part of his attorney in that his attorney's secretary, on receiving the letter from the County Clerk advising of the trial date, accidentally misfiled that letter; that on the morning of the trial date she discovered her error and at once called it to attorney Wood's attention; that Mr. Wood, thinking that Earl Coleman was the attorney for plaintiff, Faye Hughes, called Coleman's office to see if the case was still going to trial on that date; he was by that office advised that Mr. Coleman was out of town and was not trying any case in County Court that day and that no other lawyer in Coleman's office was going to try this case that day; after receiving this information he mistakenly assumed that the case had been passed and did not call his client, Glittenberg, and tell him to be present at the trial and Mr. Wood did not go to the County Court himself or call the judge, and he had no idea that Mrs. Hughes had released her attorney, Mr. Coleman, and gone to court alone to represent herself in the County Court trial on that date.

In support of Glittenberg's motion for new trial he filed an affidavit wherein the affiant swore that the facts alleged in his motion for new trial, as set out in the last paragraph above, were true and at the hearing of the motion for new trial Glittenberg's attorney, Wood, testified to the truth of the facts set out in the last paragraph above. Glittenberg testified at the hearing that he was never advised beforehand of the October 9, 1974, trial setting.

The suit was brought to recover the contract price that Mrs. Hughes contended that the Glittenbergs had contracted and agreed to pay her for a washer, a dryer and a heater.

In his motion for new trial Glittenberg alleged that he had a meritorious defense to plaintiff's action in that he made no agreement with plaintiff to pay her for the washer, dryer and heater the sum of $200 as she alleged. In his affidavit in support of the motion for new trial it was sworn that the agreement of the parties was not that Glittenberg would pay $200 for the washer, dryer and heater, but that the parties had agreed that the washer and dryer would be sold to Glittenberg for $100 and the heater for $15. In Glittenberg's motion for new trial he also alleged that all the parties' dealings had arisen out of the sale of a house and lot to Glittenberg by the plaintiff; that the parties had agreed that certain items in the house would be included in the sale, but that after the deal was closed, these items were removed from the house by plaintiff in violation of the contract, to defendant's damage in the amount of $79.11; that after the deal was closed plaintiff broke glass in the house to defendant's damage in the sum of $10.29; that a dishwasher included in the sale was represented to be in good working condition, but that it was not, to defendant's damage in the sum of $115. The defendant, in his motion for new trial, contended that he was entitled to set off these items of damage against any sums that might be found due and owing by him to Mrs. Hughes. The affidavit that Glittenberg filed in connection with his motion for new trial set out all those matters

referred to as being a meritorious defense to the plaintiff's suit and the affiant swore that the facts referred to relating to such claimed meritorious defense were true.

In defendant's motion for new trial he also alleged that, "The granting of Defendant's Motion for New Trial will not occasion delay or otherwise work any injury or hardship upon Plaintiff, FAYE HUGHES."

The record shows that the judgment was rendered on October 9, 1974, and was reduced to writing and signed on November 14, 1974. Defendant's motion for new trial was filed on November 25, 1974, and was overruled on December 12, 1974.

We affirm.

Defendant's 2nd point of error is that the trial court erred in refusing to grant a new trial because the failure of defendant and his lawyer to appear for trial was not intentional nor the result of conscious indifference and his motion for new trial, affidavit, and evidence at the hearing set forth a meritorious defense.

We overrule this point of error.

■ The rule that controls the outcome of cases such as this is announced in the case of Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133 S.W.2d 124, as follows: "A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff."

This rule applies in cases where motions for new trial seek to set aside default judgments rendered on failure of a defendant to file an answer and also to those that are rendered on the failure of a party to appear for trial after filing an answer. Ivy v. Carrell, 407 S.W.2d 212 (Tex.Sup., 1966).

■ We are convinced that the record in the case shows that Glittenberg's failure to file an answer was not intentional or the result of a conscious indifference on the part of defendant and that such failure was due to an accident or mistake. Kirk v. Farmers Aerial Spraying Service, Inc., 496 S.W.2d 739 (Amarillo, Tex.Civ.App., 1973, no writ hist.) and Continental Airlines, Inc. v. Carter, 499 S.W.2d 673 (El Paso, Tex.Civ. App., 1973, no writ hist.).

■ The question of whether or not the defendant and his lawyer were negligent in failing to appear for trial at the time the case was set for trial is not involved in passing on these elements of the rule just referred to. Ivy v. Carrell, supra, and Continental Airlines, Inc. v. Carter, supra.

Another element of the Craddock case doctrine is that the motion for new trial must "set up" a meritorious defense. Glittenberg's motion for new trial and supporting affidavit met this requirement. The motion for new trial alleged facts that in law constituted a defense to plaintiff's action and the motion for new trial was supported by an affidavit that proved prima facie the facts that constituted defendant's meritorious defense. See Ivy v. Carrell, supra, and 4 McDonald, Texas Civil Practice, Sec. 18.10.3, page 270.

In analyzing the rule laid down in the Craddock case, supra, the court in the case of Grammar v. Hobby, 276 S.W.2d 311 (San Antonio, Tex.Civ.App., 1955, ref., n. r. e.) said the following: "This rule requires four things before a default judgment will be set side: (1) The failure to file an answer must not have been intentional or the result of conscious indifference on the part of the defendant. (2) It must have been due to a mistake or an accident. (3) The motion must set up a meritorious defense. (4) The motion must be filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff."

Each of those four elements is as important as the other and the burden was on the

one moving for a new trial (Glittenberg) to establish the element of the Craddock case rule that is listed above as No. 4. In other words, the burden was on Glittenberg to negative injury to the plaintiff. Griffin v. Duty, 286 S.W.2d 229 (Galveston, Tex.Civ. App., 1956, no writ hist.). Glittenberg made no effort to discharge that burden. See also 4 McDonald, Texas Civil Practice, Sec. 18.10.4, page 270.

The only mention that Glittenberg ever made of element No. 4 of the Craddock case rule was when he alleged it (as above set out) in paragraph V of his unsworn motion for new trial. He did not attempt to offer any evidence relating to it in his affidavit that he filed in support of the *motion for new trial* and he offered no evidence whatever on that issue at the hearing of the motion for new trial.

With the record in this state we hold that the trial court did not abuse its discretion in overruling Glittenberg's motion for new trial. The case only involved $200. The record indicates that plaintiff and her husband had twice taken off from their jobs in order to attend court sessions on this matter. The cost of two persons taking off from their jobs to attend court hearings could soon consume the entire $200 involved.

■ Defendant's first point of error is that the trial court erred in refusing to order a new trial where the judgment was not supported by any pleadings.

We overrule the point.

In order to show an error in the respect complained of, the burden was on the appellant to make the record presented to this Court on the appeal show that the judgment in the case was in fact not supported by any pleadings.

The transcript in the case does not have a plaintiff's petition contained therein. But that circumstance does not establish it to be a fact that there was no such petition on file in the papers in the trial court. The clerk of the trial court affixed the following certificate to the transcript that is on file in this court: "I, MARY JO HILL, Clerk of the County Court at Law of Denton County, Texas do hereby certify that the above and foregoing 30 pages of transcript contain and *constitute a true and correct copy of all papers requested by attorney which have been filed in this cause.* Witness my hand," etc. (Emphasis ours.)

The certificate is thus to the effect that it contains all the filed papers in the case that the lawyers involved requested her to put into the transcript.

In addition to that the judgment being appealed from is in the transcript and it contains the following recital: "The defendant's name was thereupon duly called at the courthouse door . . . and after neither defendant nor his attorney in response thereto appeared for trial, all matters in controversy were submitted unto the Court for its determination and adjudication; *and, the Court having examined the pleadings,* heard the testimony and evidence offered," etc. (Emphasis ours.)

There is nothing in the appellate record submitted to us to indicate that there are no pleadings to support the judgment.

In view of the recital in the judgment to the effect that the trial court did examine the pleadings, with nothing else in the record to show otherwise, we are required to assume that such pleadings are on file in the trial court.

Because appellant did not make the record show the existence of the fact upon which his first point of error is based (his claim that the judgment is not supported by any pleadings), we overrule his first point of error.

Affirmed.