**FERGUSON & CO. Appellant,**

v.

**Doug ROLL d/b/a Frontline Search, Appellee.**

No. 05–88–01382–CV.

Court of Appeals of Texas, Dallas.

Aug. 21, 1989.

Michael A. Barragan, Dallas, for appellant.

Timothy E. Malone, Debra D. Daniel, Fort Worth, for appellee.

Before STEWART, BURNETT and WHITTINGTON.

STEWART, Justice.

Appellant, Ferguson & Co., appeals a denial of its motion for new trial, which was filed in an attempt to set aside a default judgment rendered against it and in favor of appellee, Doug Roll d/b/a Frontline Search (Roll). Because we find that the trial court abused its discretion in overruling Ferguson & Co.'s motion for new trial, we sustain Ferguson & Co.'s second point of error and reverse and remand this cause to the trial court for proceedings in accordance with this opinion.

On May 23, 1988, Roll filed suit against Ferguson & Co., alleging that Ferguson & Co. had breached an agreement to compensate Roll for services he had performed in recruiting a job candidate later hired by Ferguson & Co. According to Roll's original petition, Roll, on behalf of his company, Frontline Search, had entered into an agreement with Bill Ferguson, a principal of Ferguson & Co., pursuant to which Roll would attempt to locate and recruit job candidates for Ferguson & Co. It was further allegedly agreed that, if a candidate recruited by Roll was subsequently hired by Ferguson & Co. within one year, Roll would be entitled to receive a commission equal to thirty percent of the candidate's first year compensation. It was Roll's contention that this agreement was entered into at the end of December 1986, that Ferguson & Co. had hired one of the candidates Roll had recruited, Ron Gumz, on December 1, 1987, and that Ferguson & Co. had thereafter failed and refused to pay Roll the agreed upon commission.

It is undisputed that Bill Ferguson of Ferguson & Co. was served with citation as to Roll's suit on June 2, 1988. No answer was ever filed. On August 11, 1988, the trial court entered a default judgment in favor of Roll and awarded him $27,000 in

damages, plus attorney's fees and prejudgment interest. Ferguson & Co. filed a motion for new trial on September 9, 1988, accompanied by the affidavits of Bill Ferguson and Ed Townsend, who was president and chief operating officer of Ferguson & Co. at the time the events relating to Roll's suit occurred. The motion and affidavits relied upon the following facts to prove that Ferguson & Co.'s failure to answer was the result of an accident and mistake, rather than conscious indifference. After Bill Ferguson had been served the citation regarding Roll's suit, he attempted to forward it to Townsend by way of the company's inter-office mail. Unbeknown to Ferguson, the citation was somehow lost en route to Townsend, and he never received it. Consequently, Ferguson assumed that Townsend and the company's attorney had taken care of answering the suit, and he did not find out differently until he was notified on August 15, 1988 of the default judgment entered against Ferguson & Co. The company's motion for new trial also set forth various defenses to Roll's cause of action and asserted that a new trial in the cause would neither occasion delay nor cause prejudice to Roll.

Roll filed a response to Ferguson & Co.'s motion for new trial and, on October 24, 1988, the trial court judge signed an order overruling the motion. Ferguson & Co. then perfected an appeal to this Court, alleging six points of error.

### *CRADDOCK* TEST

■ Ferguson & Co. alleges in its second point of error that the county court abused its discretion in overruling Ferguson & Co.'s motion for new trial. A motion for new trial is addressed to the trial court's discretion and the court's ruling on such will not be disturbed on appeal in the absence of a showing of an abuse of that discretion. *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984). However, as stated in *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939), "[w]hile trial courts have some discretion in the matter, as, in truth, they have in all cases governed by equitable principles, it is not an unbridled discretion

to decide cases as they might deem proper, without reference to any guiding rule or principle."

In an effort to aid courts in dealing uniformly with cases such as the one currently before us, the *Craddock* court set forth a standard which has been followed in this state for the past fifty years:

> A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or accident; provided the motion sets up a meritorious defense and is filed at a time when the granting thereof will occasion no delay or otherwise work an injury to the plaintiff.

*Craddock,* 133 S.W.2d at 126.

### CONSCIOUS INDIFFERENCE

■ Considering each prong of the *Craddock* test separately, we will first determine whether Ferguson & Co.'s failure to file an answer to Roll's suit was due to a mistake or accident, or was, instead, intentional or the result of conscious indifference. "Some excuse, but not necessarily a good excuse," *Craddock,* 133 S.W.2d at 125, is enough under the *Craddock* rationale to warrant setting aside a default judgment, so long as the act or omission causing the defendant's failure to answer was, in fact, accidental. *See Cadena v. Dicker,* 383 S.W.2d 73, 75 (Tex.Civ.App.—Dallas 1964, no writ); *Beard v. McKinney,* 456 S.W.2d 451, 453 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ).

The excuse of a citation having been misplaced or inadvertently lost was upheld in *Craddock* itself. *Craddock,* 133 S.W.2d at 126. For other cases holding that a misplaced or lost citation successfully met the first prong of the *Craddock* test, see *Dallas Heating Co., Inc. v. Pardee,* 561 S.W.2d 16, 19 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.), *Continental Airlines, Inc. v. Carter,* 499 S.W.2d 673, 674 (Tex. Civ.App.—El Paso 1973, no writ), and *Republic Bankers Life Ins. Co. v. Dixon,* 469

S.W.2d 646, 647 (Tex.Civ.App.—Tyler 1971, no writ).

Despite the foregoing case law, Roll contends that Ferguson & Co. has failed to sustain its burden to show that its agents (Ferguson, Townsend, and the company attorney) were free of negligence or conscious indifference. In support of his argument, Roll cites the Texas Supreme Court case of *Grissom v. Watson*, in which the court quotes the opinion in *Harris v. Lebow*, 363 S.W.2d 184 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.), as follows: "A party who has been duly served with citation to appear and defend a cause asserted against him may not relieve himself of the judgment rendered unless he thoroughly demonstrates that he and his agent were free of negligence or conscious indifference." *Grissom v. Watson*, 704 S.W.2d 325, 327 (Tex.1986).

To explain our rejection of the "rule" set forth above, it may be illustrative to consider the case law cited by the *Harris* court as authority for its requirement that a defendant must show himself and/or his agent to be free of negligence in a *Craddock* context. The two supporting cases cited in *Harris*, *Grammar v. Hobby*, 276 S.W.2d 311 (Tex.Civ.App.—San Antonio 1955, writ ref'd n.r.e.) and *Brothers Dept. Store, Inc. v. Berenzweig*, 333 S.W.2d 445 (Tex.Civ. App.—San Antonio 1960, writ ref'd n.r.e.), both deal with defendants entrusting their citations to a third person, who failed to perform a certain task which was necessary for the lawsuit to be timely answered. In *Grammar*, the defendant gave his citation to a man who was supposed to deliver it to the defendant's attorney. Although the defendant's agent informed the attorney as to his possession of the citation, the agent did not deliver it to the attorney until the same day that a default judgment was rendered against the defendant. Under those facts, the court in *Grammar* held that the defendant's failure to timely file an answer was due to the conscious indifference of the defendant, his agent, and, perhaps, his counsel. *Grammar*, 276 S.W.2d at 313. The term "negligence" is never used in the *Grammar* opinion.

In *Berenzweig*, one of the defendants entrusted the citation for all the defendants to his attorney's secretary who, he later testified, assured him that the attorney would properly handle the matter. The defendant subsequently called his attorney five or six times to check on the suit, but was never able to reach him. The two men finally encountered each other on the street and the defendant asked about his case. The attorney promised to look into the matter and, later that day, informed the defendant that the suit was filed in another county and, therefore, he would be unable to handle it. A default judgment was, coincidentally, taken against all of the defendants on the same day that they received notice that they were not represented by counsel. The court in *Berenzweig* found that the defendants had not shown that their failure to file answers was due to a mistake or accident, and cited the *Grammar* opinion for the proposition that "[f]ailure to employ an attorney and make sure that he understands he is to file an answer, unless he expects to represent himself, is ordinarily *inexcusable negligence.*" *Berenzweig*, 333 S.W.2d at 447 (emphasis added). The court further held that even if the defendants could prove that their attorney was negligent, such negligence was not a justification for their failure to answer. *Id.* Interestingly, the cases cited by the *Berenzweig* court to support this latter statement of law are all pre-*Craddock*, except two, both of which make no mention of negligence on the part of thedefendant.

It is clear from this review that the *Harris* court took a quantum leap from the holdings in *Grammar* and *Berenzweig* to reach its "free of negligence" rule. Furthermore, the holdings in *Harris* and *Grissom* do not appear to truly stand for such a stringent rule. In both *Harris* and *Grissom*, the individual defendant forwarded the citation and petition to a representative of his insurance carrier. In *Harris*, the record was silent as to why the insurance company failed to file an answer as it allegedly had agreed to do. *Harris*, 363 S.W.2d at 187. In *Grissom*, a post-answer default, the record was silent as to why the insurance company waited three months to ob-

tain new counsel for the defendant after the first company-procured attorney withdrew, during which period the trial court entered the default judgment. *Grissom,* 704 S.W.2d at 327. In both cases, the court held the respective "failures" to be intentional or the result of conscious indifference on the part of the defendant's agent, the insurance company, which had received the citation and petition, but, thereafter, had failed to take proper steps to protect the individual defendants from default judgments. Neither of these cases holds that the defendant had to show that the insurance company was free of negligence; they simply hold that the defendant failed to prove his agent's "failure" was not intentional or the result of conscious indifference, because of lack of evidence on that issue.

■ Thus, we conclude that this line of cases should properly be interepreted as holding that when a defendant's excuse is his reliance on a third party to file his answer or to notify him of a trial setting, he must prove that the third party's failure was due to accident or mistake and not intentional or the result of conscious indifference. We do not read these cases as establishing a rule that a defendant must show that he and/or his agent were free of negligence. Our reasoning is supported by the in-depth analysis given this topic in the law review article of Pohl and Hittner, *Judgment by Default in Texas,* 37 SW.L.J. 421, 443, in which the authors unequivocally state that, under the *Craddock* test, "The defendant's negligence will not preclude the setting aside of a judgment by default. In fact, the defendant's burden of demonstrating the accidental or mistaken nature of his failure to answer may often result in an admission of negligence." Pohl and Hittner, 37 SW.L.J. at 443.

We also note that the recent supreme court case of *Cliff v. Huggins,* 724 S.W.2d 778, 779, (Tex.1987) makes no mention of a free of negligence standard with regard to the three-prong *Craddock* test. Further, the following cases specifically reject such a standard in the *Craddock* context: *Ivy v. Carrell,* 407 S.W.2d 212, 213 (Tex.1966),

*Gotcher v. Barnett,* 757 S.W.2d 398, 402 (Tex.App.—Houston [14th Dist.] 1988, no writ), *Aetna Life & Casualty Co. v. Lyon,* 576 S.W.2d 114, 116 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.), *Spears v. Brown,* 567 S.W.2d 544, 546 (Tex.Civ.App.—Texarkana 1978, writ ref'd n.r.e.), *Healy v. Wick Bldg. Sys. Inc.,* 560 S.W.2d 713, 716 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.), *O'Hara v. Hexter,* 550 S.W.2d 379, 382 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.), *Continental Airlines, Inc.,* 499 S.W.2d at 675, and *Farley v. Clark Equip. Co.,* 484 S.W.2d 142, 146 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). Accordingly, we reject Roll's contention that Ferguson & Co. had the burden to prove its agents were free of negligence.

■ In attempting to prove conscious indifference on the part of Ferguson & Co., Roll asserts that Ferguson & Co., through its agent, Bill Ferguson, failed to exercise "due diligence" to ensure that an answer was properly filed, *Cummins v. Paisin Constr. Co.,* 682 S.W.2d 323 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), and he argues that Ferguson and Townsend failed to "take some action which would seem indicated to a person of reasonable sensibilities under the same circumstances." *Johnson v. Edmonds,* 712 S.W.2d 651, 652–653 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.).

We decline to accept the due diligence requirement of *Cummins* because it is inextricably linked in that opinion to the free of negligence standard which was first enunciated by the *Harris* court, and which we have held is not the proper test under *Craddock.* It is unnecessary at this time to take issue with the conscious indifference definition set forth in *Johnson,* since that case can be factually distinguished from the one at bar. In *Johnson,* the defendant failed to timely file an answer because he allegedly did not understand the nature of the citation served upon him. He simply read the "papers" and filed them. The court held that this inaction due to alleged ignorance amounts to evidence of conscious indifference. *Accord First Nat'l Bank v. Peterson,* 709 S.W.2d 276,

279 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Butler v. Dal Tex Mach. & Tool Co.*, 627 S.W.2d 258, 260 (Tex.App. —Fort Worth 1982, no writ). These cases involve inaction by the defendant after service and are distinguishable from cases involving some action by a defendant which results in accidental loss or placement of suit papers after service.

In the case before us, we must look to the knowledge and acts of Ferguson & Co., and its agents, in determining whether it acted with intentional disregard or conscious indifference when it failed to timely answer Roll's lawsuit. *Strackbein*, 671 S.W.2d at 39. The only evidence to be adduced from the record in this regard are Ferguson's and Townsend's affidavits. Bill Ferguson states that he was served the citation and, subsequently, placed it in the company's inter-office mail, that the papers were lost and never recovered, and that he assumed Townsend had received them. Townsend's affidavit reflected that he never received the papers and did not know the suit had been filed until notice of the default judgment was received. Although Roll maintains that these facts are insufficient to prove a lack of conscious indifference on the part of Ferguson & Co., he does not controvert the actual facts themselves. Where factual allegations in a movant's affidavits are not controverted, "[i]t is sufficient that the movant's motion and affidavits set forth facts which, if true, would negate intentional or consciously indifferent conduct." *Id.* In a fact situation very similar to the case at bar, the *Strackbein* court held that uncontroverted affidavits showing that suit papers were inadvertently misplaced in the defendant's office, rather than mailed to his attorney, constituted evidence that the defendant's failure to answer the citation was not the result of an intentional act or conscious indifference. *Id.*

Based on the foregoing, we hold that Ferguson & Co. met its burden to prove that the company and its agents failed to file a timely answer to Roll's lawsuit because of an accident or mistake and that their failure was not intentional or the result of conscious indifference.

## MERITORIOUS DEFENSE

Roll also contends that Ferguson & Co. has failed to adequately plead and prove any meritorious defenses to Roll's claim. In *Ivy*, the supreme court explained that the rule in *Craddock* does not require *proof* of a meritorious defense but, rather, requires that a defendant set up a meritorious defense: "The motion must allege *facts* which in law would constitute a defense to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence proving prima facie that the defendant has such meritorious defense." *Ivy*, 407 S.W.2d at 214. Once the defendant has met this burden, the motion for new trial should not be denied upon any consideration of counter affidavits or contradictory testimony offered by the opposing party. *Farley*, 484 S.W.2d at 142. However, the legal sufficiency of the facts may be challenged. *Dallas Heating Co., Inc.*, 561 S.W.2d at 20.

A meritorious defense is one that, if proved, would cause a different result upon a retrial of the case, although it need not be a totally opposite result. *The Moving Co. v. Whitten*, 717 S.W.2d 117, 120 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). For example, any defense to a portion of the damages awarded in the default judgment might produce the different result of a lesser amount of damages, thus requiring a new trial on the damage issues. *Folsom Investments, Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex.App.— Fort Worth 1982, writ ref'd n.r.e.). Moreover, if, as in the case before us, an appellant's motion for new trial and affidavits raise several defenses, the second prong of the *Craddock* test will be satisfied if any one of its defenses qualifies as meritorious. *Gotcher*, 757 S.W.2d at 403.

In its motion for new trial, Ferguson & Co. asserted that it had several meritorious defenses to Roll's breach of contract action. The company, through its motion and the affidavits of Ferguson and Townsend, denied the existence of any type of agreement between Ferguson & Co. and

Roll. It also asserted that, if such an agreement did exist, Gumz was hired because of Townsend's prior association with Gumz and not because of any of Roll's efforts, and it stated that Ferguson & Co. never agreed to pay Roll a percentage of Gumz's first year compensation as a fee for services rendered by Roll. Although not specifically set forth in the motion, both Ferguson and Townsend's affidavits further alleged that Gumz was not paid a $90,000 salary for his first year with Ferguson & Co. and, therefore, that the $27,000 in damages awarded to Roll as representing thirty percent of Gumz's compensation, was a completely incorrect figure.

In *Dallas Heating Co., Inc.*, one of the defendant's meritorious defenses was its denial of the existence of any agreement with the plaintiff regarding the sale of a new, rather than rebuilt, compressor unit. *Dallas Heating Co., Inc.*, 561 S.W.2d at 20. The court held that this denial, along with the affidavit of the defendant's sales manager which stated that the plaintiff's son had contacted him and, because of cost considerations, the son had ordered a rebuilt unit, was enough to establish a meritorious defense. In the instant case, the denials set forth in Ferguson & Co.'s motion for new trial are factually supported by the affidavits of Ferguson and Townsend, especially with regard to whether Roll was the procuring cause of Gumz's employment, and whether Gumz did or did not receive $90,000 for his first year's compensation. We conclude that, in its meritorious defenses, Ferguson & Co. put the terms of the contract in issue, both as to liability and as to damages. A plaintiff in a breach of contract action has the burden to prove that the defendant has obligated himself under the contract. *Miles v. Plumbing Serv. of Houston, Inc.*, 668 S.W.2d 509, 512 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Therefore, we hold that Ferguson & Co. has successfully met the meritorious defense requirement of *Craddock*.

### NO DELAY OR INJURY

■ In order to meet the third prong of the *Craddock* test, Ferguson & Co. must have filed its motion at a time when the granting thereof would occasion no delay or otherwise injure Roll. *Dallas Heating Co., Inc.*, 561 S.W.2d at 21. Courts of appeals have further held that it is often necessary for the defendant to offer to reimburse the plaintiff for costs involved in obtaining the default judgment, and that the defendant should be ready, willing and able to go to trial almost immediately. *Angelo v. Champion Restaurant Equip. Co.*, 713 S.W.2d 96, 98 (Tex.1986). However, once the defendant has tendered prima facie evidence that the granting of a new trial will not delay or otherwise injure the plaintiff, it is then the plaintiff's burden of going forward to prove injury. *Burns v. Burns*, 568 S.W.2d 669, 672 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.).

■ In its motion for new trial, Ferguson & Co. enumerated all of the foregoing requisites to negate any type of injury to Roll resulting from the trial court's granting of its motion. Roll did not controvert this lack of injury in either his response to Ferguson & Co.'s motion or in his arguments to this Court. Therefore, we hold that Ferguson & Co. has successfully met all three criteria for the setting aside of a default judgment, as set forth in *Craddock*, and, accordingly, that the county court abused its discretion in overruling Ferguson & Co.'s motion for new trial. Because we are sustaining Ferguson & Co.'s second point of error, we do not consider its other five points of error.

The judgment is reversed and the cause is remanded to the trial court for proceedings in accordance with this opinion.